**ROBERT E. DENTON, INC. and John P. Biscanin, Administrator of the Estate of Philip H. Wolfram, Appellants,**

v.

**SPELMAN MEMORIAL HOSPITAL and Gene Meyer, Respondents.**

**No. WD 41563.**

Missouri Court of Appeals, Western District.

Jan. 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1990.

Stephen R. Gleason, David M. Gleason, Kansas City, for appellants.

Jerome E. Brant, Nancy A. Norton, Withers, Brant, Howard & Mullennix, Liberty, for respondents.

Before BERREY, P.J., and TURNAGE and ULRICH, JJ.

ULRICH, Judge.

Appellants Robert E. Denton, Inc., and John P. Biscanin, Administrator of the Estate of Philip H. Wolfram, appeal from the court's order granting defendants' motion for a directed verdict at the close of plaintiffs' case. The judgment is affirmed.

Robert E. Denton and Philip H. Wolfram were medical doctors who practiced medicine at Spelman Memorial Hospital, (hospital) Smithville, Missouri. Dr. Wolfram had practiced medicine in Smithville for ten years prior to his death in an automobile collision on October 30, 1985. Robert E. Denton practiced medicine in Smithville for in excess of eleven years as the sole physician employee of Robert E. Denton, Inc. (Denton Inc.) Dr. Denton died August 1, 1986. Two separate causes of action were filed as a single case against the hospital and Gene Meyer, Administrator of the hospital. The plaintiffs alleged theories to support claims that Mr. Meyer, acting in behalf of the hospital, was obligated to sell Dr. Denton's and Dr. Wolfram's medical practices after their deaths and failed to sell them and that he interfered with the prospective sale of Dr. Denton's practice to another physician.

### ROBERT E. DENTON, M.D.

Robert E. Denton, M.D., was the sole physician employee of Robert E. Denton, Inc., from February 7, 1975, until his death on August 1, 1986. Dr. Denton practiced medicine as a general surgeon at the hospital, and he also conducted a small family practice in an office he leased from the hospital. At the time of his death, Dr. Denton was married to Deborah Ann Shook (Denton), who has remarried.

In March of 1986, Dr. and Mrs. Denton discussed selling the Denton Inc., medical practice with Gene Meyer, then Administrator of the hospital. Dr. Denton was depressed by the strain of medical practice and wanted to reduce his work load, possibly even retiring from the practice of medicine. Mr. Meyer stated that the hospital would cooperate with the Dentons' effort to find a partner for Dr. Denton or a prospective buyer of the practice. Dr. Denton periodically spoke to Mr. Meyer about the practice, and the Dentons did not initiate contact with brokers about selling the practice after March 20, 1986.

Dr. Denton experienced a debilitating heart attack in April 1986. Mr. Meyer told Mrs. Denton that the hospital would continue its attempt to find a purchaser of the Denton Inc. medical practice. Mr. Meyer informed Mrs. Denton on at least three occasions that the hospital was recruiting prospective buyers of the Denton Inc. practice. Mrs. Denton testified that she relied on Mr. Meyer acquiring a buyer.

In June 1986, the hospital introduced Dr. Mark Epstein to the Dentons as a prospective buyer of the Denton Inc. practice. Dr.

Epstein spoke to Mrs. Denton on at least three occasions about purchasing the practice. Dr. Epstein made an offer to purchase the practice. The Dentons rejected the offer because the manner the purchase price was to be paid was not acceptable, although the purchase price was agreed to initially. Negotiations continued between the prospective buyer and seller for an indeterminate period of time, the hospital aiding as mediator between them, until negotiations between them ceased. Dr. Denton died August 1, 1986. At some time, Dr. Epstein entered into an agreement with the hospital, and he utilizes the office space previously leased by Denton Inc. in which Dr. Denton practiced medicine.

## PHILIP H. WOLFRAM, M.D.

Philip H. Wolfram, M.D., practiced medicine for ten years in office space leased from Spelman Memorial Hospital before he was killed in an automobile accident on October 30, 1985. Roberta Lou Wolfram, his spouse for thirty-three years, survived him. After her husband's death, Mrs. Wolfram acquired the names of two brokers whose businesses included selling medical practices. She also spoke to Gene Meyer, Administrator of the hospital, and discussed her desire to sell her husband's practice. Mr. Meyer told Mrs. Wolfram that he would locate a buyer. Mrs. Wolfram telephoned Mr. Meyer two or three times a week to learn whether he had found a buyer for her husband's practice. She sold her husband's equipment located at the leased office space following its appraisal in December 1985 because she could no longer afford to lease from the hospital the office space where it was located.

Soon after her husband's death, Mrs. Wolfram's brother-in-law, Walter Wolfram, a practicing attorney engaged primarily in civil litigation for over thirty years in Amarillo, Texas, began to assist his brother's widow. He spoke to Mr. Meyer, hospital administrator, about his sister-in-law's desire to sell her husband's medical practice. Mr. Meyer told Walter Wolfram that the hospital would seek prospective buyers for Dr. Wolfram's medical practice. During six to eight telephone calls between Mr.

Meyer and Walter Wolfram, they agreed on the approximate value of the practice. Mr. Meyer stated that the hospital would help finance the transaction if a prospective purchaser were found. They discussed Mr. Wolfram acquiring a broker to sell Dr. Wolfram's practice, and Mr. Meyer stated that he could sell the practice and would not charge a brokerage fee. They agreed it was important to sell the practice as quickly as possible because the practice would lose value rapidly without a physician providing medical services to patients. The hospital never presented a buyer.

By January of 1986, a physician was using the office space at the hospital that Dr. Wolfram previously used to provide medical services to his patients. The physician was using Dr. Wolfram's patients' medical records. Walter Wolfram testified that he relied solely on Mr. Meyer to obtain a buyer for Dr. Wolfram's medical practice.

John P. Biscanin was appointed administrator of the estate of Philip H. Wolfram.

## OPINION

The trial court directed a verdict for defendants at the close of plaintiffs' cases. The plaintiffs allege that the trial court erred in directing a verdict for the defendants at the close of their proof and that they offered sufficient evidence to support submission of their cases to the jury that (1) they had detrimentally relied (promissory estoppel) on the defendants' representations, and that (2) the defendants breached a contract by failing to procure a buyer for the medical practices of Drs. Denton and Wolfram. Plaintiff, Robert E. Denton, Inc., also contends that (3) sufficient evidence was presented to submit to the jury on the theory that defendants wrongfully interfered with a prospective contract between plaintiff, Denton Inc., and Dr. Mark Epstein.

The plaintiffs did not file a motion for a new trial after the trial court directed a verdict for the defendants. Rule 78.07 requires that in jury-tried cases "allegations of error to be preserved for appellate review must be included in a motion for new

trial except that questions of jurisdiction over the subject matter, questions as to the sufficiency of the pleadings to state a claim or defense and questions authorized by Rule 72.01 to be presented in motions for judgment need not be included in a motion for a new trial." Rule 78.07 is applicable when directed verdicts are entered in jury-tried cases, and contentions that a verdict was erroneously directed must be raised in a motion for a new trial to be preserved for appellate review. *Dick v. Race Brothers Farm Supply*, 728 S.W.2d 687, 688 (Mo. App.1987); *Dixon v. Model Cities Health Corp. of Kansas City*, 651 S.W.2d 498, 499 (Mo.App.1983). The contentions plaintiffs seek to raise on appeal were not properly preserved for appellate review.

The appellants do not raise the plain error rule, but this court examines whether it is applicable. Rule 84.13(c) provides that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." If either plaintiff made a submissible case, it would be plain error affecting substantial rights and a manifest injustice for the court to direct a verdict against that plaintiff. *Williams v. Southern Pacific Railroad Co.*, 338 S.W.2d 882, 884 (Mo.1960). The transcript on appeal has been reviewed to determine whether the plaintiffs made submissible cases. They did not. The facts disclose no manifest injustice or miscarriage of justice and the "plain error" rule does not apply.

Judgment affirmed.

All concur.